# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CORNERSTONE CHURCH OF NASHVILLE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Case No. 3:20-cv-00956** **Judge Aleta A. Trauger** |
| GUIDEONE INSURANCE, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM

GuideOne Insurance ("GuideOne") has filed a Motion to Dismiss First Amended Complaint (Doc. No. 22), to which Cornerstone Church of Nashville, Inc. ("Cornerstone") has filed a Response (Doc. No. 25), and GuideOne has filed a Reply (Doc. No. 26). For the reasons set out herein, the motion will be granted.

## I. BACKGROUND[1]

Cornerstone is a Tennessee nonprofit corporation based in Madison, Tennessee. GuideOne is an Iowa-based insurance company that does business in Tennessee. (Doc. No. 21 ¶¶ 1, 2.) In 2007, Cornerstone and GuideOne entered into an agreement for GuideOne to be Cornerstone's primary insurance provider. (*Id.* ¶ 4.) The policy in effect at that time provided a "General Aggregate Limit" on commercial general liability ("CGL") of $3,000,000, with a $1,000,000

---

[1] Unless otherwise indicated, these facts are taken from the Amended Complaint (Doc. No. 21) and are accepted as true for purposes of the motion to dismiss.

liability limit per occurrence. (Doc. No. 22-3 at 78.)[2] Under "Coverage A" of the CGL Coverage

Form, for "Bodily Injury and Property Damage," GuideOne had an obligation to "pay those sums

that the insured becomes legally obligated to pay as damages because of 'bodily injury' or

'property damage' to which this insurance applies," as well as the "right and duty to defend the

insured against any 'suit' seeking those damages." (*Id.* at 93.) However, injury or damage arising

from certain enumerated exclusions identified in the Policy was not covered. (*Id.* at 93–97.)

Among those exclusions was an exclusion for "[a]ny . . . 'bodily injury' and mental or emotional

pain or anguish, sustained by any person arising out of or resulting from any actual or alleged act

of sexual misconduct of any kind." (*Id.* at 99.)

The policy did incorporate a separate rider providing coverage for liability for sexual

misconduct, in the maximum amount of $500,000 per occurrence. (*Id.* at 79, 88.) Under the Sexual

Misconduct Liability Coverage Form (the "SML rider"), GuideOne agreed to cover Cornerstone's

"legal liability for damages because of bodily injury [and] mental anguish or emotional distress

sustained by a person as a result of sexual misconduct which first commences during the policy

period." (*Id.* at 88.) This duty incorporated a duty to defend any suit brought against Cornerstone

seeking such damages and to "make any settlement we deem expedient." (*Id.*)

In 2016, a plaintiff filed a complaint against Cornerstone in Davidson County Circuit Court

alleging that he had been sexually touched and ultimately raped by a member of the organization's

"Youth Staff" in the summer of 2008, when the plaintiff was eleven years old. (Doc. No. 22 ¶ 5;

*see also* Doc. No. 22-2 ¶¶ 20, 25–27, 29.) According to the 2016 complaint, the plaintiff did not

tell anyone about the abuse at the time it occurred. (Doc. No. 22-2 ¶ 28.) However, shortly after

---

[2] As the court previously explained in the context of the prior motion to dismiss, the court will consider certain documents that, although not attached to the operative complaint, are in the record, were referenced by the complaint, and are integral to the complaint's allegations. (*See* Doc. No. 17 at 3–4 nn.1–2.)

the rape, in the fall of 2008, the victim's mother discovered inappropriate text messages from the abuser on her son's phone. Although the complaint in the underlying litigation did not provide full excerpts of the text messages, it appears that they were inappropriate and at least implicitly sexual in nature but that they did not affirmatively establish that physical abuse had already occurred. (*Id.* ¶ 30.) The victim's mother brought these messages to the attention of church officials, who told her that they would "take care of" the situation. (*Id.* ¶ 31.) No action was taken, however, and the abuser was permitted to appear at Cornerstone events between 2008 and 2010, causing the victim severe emotional distress. (*Id.* ¶ 34.) In 2014, the victim disclosed to a therapist that he had been sexually abused in 2008. The therapist referred him to the Tennessee Department of Children's Services, and a police investigation was opened. Ultimately, the abuser was arrested and prosecuted on charges of aggravated sexual battery and rape of a child, among other offenses. As of 2016, he remained incarcerated. (*Id.* ¶ 36.)

The complaint in the victim's lawsuit set forth claims against Cornerstone for negligence and reckless and/or intentional infliction of emotional distress, based both on Cornerstone's conduct that allegedly caused or contributed to the sexual assault, such as its negligent hiring, and on conduct that took place after the assault, including Cornerstone's alleged failure to implement policies to protect other children from sexual abuse, failure to prevent the victim from being exposed to his abuser, and failure to "fully investigate and report [the abuser's] suspicious and inappropriate behavior to law enforcement authorities." (*Id.* ¶¶ 47, 50.)

GuideOne provided a defense to Cornerstone in the underlying lawsuit, and a settlement was reached before the case proceeded to trial. Regarding that settlement, Cornerstone alleges that, "in reliance upon representations made by" what Cornerstone initially refers to as "counsel for GuideOne," Cornerstone entered into a settlement agreement with the victim that resolved and

3

settled all claims at issue in exchange for a payment to the victim of a sum that is apparently subject to a confidentiality agreement but that is at least $1,000,000. (Doc. No. 21 ¶¶ 6–7; Doc. No. 22-1 at 1.) Specifically, Cornerstone alleges that the "counsel for GuideOne" told Cornerstone that "GuideOne would pay for coverage in the full amount of $500,000 for the sexual misconduct by an agent of the church and for an additional $500,000 under the general liability limits which could be sought after the settlement . . . .'" (Doc. No. 21 ¶ 8.)

Although Cornerstone's allegations are somewhat unclear, this "counsel for GuideOne" appears, from the next paragraph, to have been Chris Ehresman, an attorney who actually represented *Cornerstone* and who had merely been assigned to that duty by GuideOne. (*Id.* ¶ 9.) As described by Cornerstone, Ehresman's recommendation regarding the insurance coverage was as follows:

> $500,000 is available now from [GuideOne] for Sexual Misconduct Coverage. Use this money now as part of the settlement and then approach [GuideOne] for the additional $500,000 of liability coverage that you should be entitled to after the case is settled due to "time being of the essence" to settle this case with the beginning of trial and court dates quickly approaching.

(*Id.* ¶ 9.) Once the settlement was finalized, however, GuideOne denied any liability to Cornerstone for the $500,000 the church had paid out of pocket, asserting that the insurance company's liability under the Policy was limited to $500,000 per occurrence for sexual misconduct. (*Id.* ¶ 11.)

On August 10, 2020, Cornerstone filed the Complaint initiating this action in the Chancery Court for Davidson County, Tennessee, in which it named GuideOne as the sole defendant and alleged that GuideOne had breached the insurance contract and denied Cornerstone's claim in bad faith in violation of Tenn. Code Ann. § 56-7-105. (Doc. No. 1-2.) GuideOne removed the case to federal court on November 6, 2020 on the basis of diversity jurisdiction. (Doc. No. 1.) On

4

December 1, 2020, GuideOne filed a Motion to Dismiss. (Doc. No. 8.) After briefing was completed by the parties, the court issued a Memorandum and Order granting the motion in part and denying it in part. (Doc. Nos. 17–18.) Specifically, the court dismissed Cornerstone's claim for bad faith refusal to pay with prejudice and dismissed its claim for promissory estoppel, insofar as one had been pleaded, without prejudice. (Doc. No. 18 at 1.)

With regard to whether GuideOne breached the policy, the court recognized that it was at least possible that damages arising out of Cornerstone's post-abuse conduct, particularly its failure to protect the victim from being exposed to his abuser after inappropriate text messages had been discovered, were covered separately under the CGL policy and that, accordingly, GuideOne's liability was not limited by the $500,000 cap of the SML rider. The court, however, lamented the "absence of briefing on the issue of concurrent cause," which would govern how to apply the policy to an injury caused both by an excluded cause and later, non-excluded actions. Because the briefing was inadequate and because GuideOne, as the movant, bore the burden of supporting dismissal, the court did not dismiss the breach of contract claim at that point. With regard to promissory estoppel, the court concluded that Cornerstone's claim was "inadequately pleaded," but the court left open the possibility that Cornerstone could adequately restate that claim in an amended complaint. (*Id.* at 19.)

On May 4, 2021, Cornerstone filed an unopposed Motion to Amend Pleadings for the stated purpose of adequately pleading a claim for promissory estoppel. (Doc. No. 19 at 1.) The court granted the motion. (Doc. No. 20.) Shortly thereafter, GuideOne filed its currently pending Motion to Dismiss. (Doc. No. 22.) GuideOne not only requests dismissal of the newly refined promissory estoppel claim but also seeks, again, to have the court dismiss the claim for breach of contract. (*Id.* at 3–4.)

5

## II. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

Generally, if "matters outside the pleadings are presented to and not excluded by the court,

6

the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, it has long been the rule that a court may consider not only the Complaint and exhibits attached to it, but also exhibits attached to defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted).

## III. ANALYSIS

### A. Breach of Contract

The court set out the general law governing the construction of insurance contracts in Tennessee in its prior opinion. In short, insurance policies are contracts. *Powell v. Clark*, 487 S.W.3d 528, 534 (Tenn. Ct. App. 2015) (quoting *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 527 (Tenn. 2012) (Koch, J., dissenting)). As such, "[t]he question of the extent of insurance coverage is a question of law involving the interpretation of contractual language." *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012) (citing *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009)); *see also Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006) ("The interpretation of an insurance policy is a question of law and not fact.") (citation omitted). "Insurance contracts are 'subject to the same rules of construction as contracts generally,' and in the absence of fraud or mistake, the contractual terms 'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" *Clark*, 368 S.W.3d at 441 (quoting *U.S. Bank*, 277 S.W.3d at 386–87). Exclusions and limitations in insurance policies "must be construed against the insurance company and in favor of the insured." *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991). These clauses should not, however, "be so narrowly construed as to defeat their evident purpose." *Capitol Indem. Corp. v. Braxton*, 24 F. App'x 434, 439 (6th

7

Cir. 2001) (citation omitted).

As this court previously held, all of the injuries pleaded in the underlying litigation were, at least in part, but-for results of the sexual abuse committed against the plaintiff in that litigation. Based on that fact, GuideOne construed all resulting damages as excluded from the general liability policy and subject only to the SML rider and its $500,000 limitation. Some of the injuries at issue, however, were not caused *solely* by the assault. In the original litigation, the victim alleged that his suffering was compounded by the fact that he had to see his abuser at Cornerstone activities, despite the fact that Cornerstone was, at the time, at least aware of the abuser's inappropriate texting. Those injuries were caused by the abuse itself, of course—in that the abuse was the underlying trauma giving rise to the situation—but the post-abuse emotional injuries were also caused, in part, by the distinct decision by Cornerstone to allow the abuser to continue to participate in activities in which children, including the victim, were present.

There is, moreover, Tennessee caselaw regarding concurrent causes of injury under insurance contracts that is favorable to Cornerstone's position. In *Allstate Insurance Co. v. Watts*, the Tennessee Supreme Court held that a homeowner's insurance policy that contained an exclusion for injuries arising out of the maintenance of a motor vehicle nevertheless covered injuries caused when the insured, who had negligently caused a pan of oil to catch fire while he and another person were working on a car, picked up the pan to take it outside but dropped and kicked it, causing flammable liquid to splash on his friend. *Watts*, 811 S.W.2d at 885. The Tennessee Supreme Court wrote that it was "persuaded that there should be coverage in a situation . . . where a nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy." *Id.* at 887;

*see also Clark*, 368 S.W.3d at 441 ( "Tennessee recognizes the concurrent cause doctrine." (citing *Allstate*, 811 S.W.2d at 887)). By the same logic, there were arguably two proximate causes of the victim's emotional injury in the underlying litigation, only one of which would be excluded under the general liability policy. Under *Allstate*, such a claim might succeed under the concurrent cause doctrine. As the court noted, however, the briefing on this particular issue that accompanied the prior motion to dismiss was unfortunately bare-bones.

Because Cornerstone's Amended Complaint superseded its original Complaint and reopened the window for filing a Rule 12(b)(6) motion, GuideOne has had the opportunity to brief this issue with more detail.[3] In so doing, GuideOne has identified a reason why, in its view, it was correct to deny general liability coverage, regardless of the scope or details of Tennessee's caselaw regarding insurance exclusions and concurrently caused injuries. Specifically, GuideOne points out that the general liability coverage only reaches "property damage" or "bodily injury," with "bodily injury" defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. No. 22-3 at 93, 107.) The only injuries plausibly inflicted by Cornerstone's post-abuse actions, however, were emotional and psychological in nature. The Tennessee Supreme Court, moreover, has already held, in the context of construing an insurance statute, that "the phrase 'bodily injury[]' . . . does not include damages

---

[3] Cornerstone complains that the court has already ruled on the adequacy of its breach of contract claim in the context of Rule 12(b)(6) and should not consider the issue again. Such an argument might well be persuasive in an ordinary case. Typically, if the court has already denied a Rule 12(b)(6) motion with regard to a claim, the court's legal conclusions mandating that holding will be the law of the case, meaning that, while the court *could* revisit its analysis, the court typically would not do so in the absence of some good cause, such as an intervening change in the law. In this instance, however, the court was clear that it was keeping open the issue of concurrent cause and denying GuideOne's motion, not because the issue favored Cornerstone's position, but because it had not been adequately briefed. (Doc. No. 17 at 13.) The issue of how and whether concurrent cause applies here was therefore almost certainly going to be brought up by GuideOne again at some point, and Cornerstone's decision to amend the complaint created an opportunity for GuideOne do so. The court, accordingly, will consider GuideOne's argument on the merits.

9

for a mental or emotional injury by itself." *Garrison v. Bickford*, 377 S.W.3d 659, 669 (Tenn. 2012). Although it is perhaps possible that the Tennessee Supreme Court would construe the same phrase differently for the purposes of Cornerstone's general liability policy, that strikes this court as exceedingly unlikely, given the fact that the Tennessee Supreme Court expressly based its analysis on the "commonly understood meaning" of the words involved, as well as the holdings of "'the overwhelming majority of jurisdictions which have considered th[is] issue.'" *Id.* at 670 (quoting *Citizens Ins. Co. of Am. v. Leiendecker*, 962 S.W.2d 446, 452 (Mo. Ct. App. 1998)).

The emotional injuries suffered by the abuse victim as a result of Cornerstone's failure to protect him from seeing his abuser at church functions may well have been severe; it is not difficult to imagine the harm that could be done to a young child by his being forced to see his own religious community embracing his abuser—even if the church itself, at that point, knew only about less serious (but still troubling) allegations. Regardless, however, the general liability coverage does not define the injuries encompassed by the coverage in terms of their seriousness, but their cause and type, and the type of injury caused by the church's post-abuse actions was not a type covered under the plain language of the general liability policy.

Cornerstone responds that "[t]he underlying complaint does not limit which conduct caused which type of injury," and, "[a]ccordingly, the failure to report or negligent hiring allegations may reasonably be said to have caused physical injury outside of injuries sustained from the sexual assault." (Doc. No. 25 at 4.) Cornerstone, however, offers no explanation of how that could have been the case, what physical injuries it is relying upon, or how they were caused by something other than the assault. Cornerstone's obligation, as the plaintiff in this case, was to plead its claims in a manner that was plausible and clear enough to give GuideOne notice of the plaintiff's general theory of the case. Cornerstone failed to clear that bar with regard to the possibility that the

underlying plaintiff's bodily injuries were caused by something other than the abuse he suffered, and Cornerstone has failed to state another reason why it would be entitled to recover under the general liability policy. The court, accordingly, will dismiss the breach of contract claim.

**B. Promissory Estoppel**

In Tennessee, the doctrine of promissory estoppel, also called equitable estoppel and detrimental reliance, mandates that "[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Shedd v. Gaylord Ent. Co.*, 118 S.W.3d 695, 699 (Tenn. Ct. App. 2003) (quoting *Alden v. Presley*, 637 S.W.2d 862 (Tenn. 1982)). Cornerstone's original complaint was unclear with regard to what causes of action it encompassed, including whether it included a claim for promissory estoppel. In its Response to the Motion to Dismiss, however, Cornerstone asserted that the Complaint "allege[d] facts which constitute the elements of promissory estoppel." (Doc. No. 15 at 3–4.) Although the court found the initial pleading inadequate, it is not difficult to see how these facts might at least implicate issues relevant to promissory estoppel, and so the court allowed Cornerstone the opportunity to amend, which it has now done. GuideOne nevertheless argues that the pleadings are still inadequate to state such a claim.

To succeed on a promissory estoppel claim, a plaintiff must show "(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that [the promisee] reasonably relied upon the promise to [its] detriment." *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007) (citations omitted). Tennessee does not liberally apply the doctrine, instead limiting its application to "exceptional cases" in which enforcing the doctrine is necessary to avoid "hardship and oppression, verging on actual fraud."

11

*Shedd*, 118 S.W.3d at 700 (citations omitted) (emphasis added); *see also Chavez*, 245 S.W.3d at 407 ("Similarly to *Shedd*, there was no proof presented that [the defendant] was guilty of any conduct that verged on actual fraud, that it acted from improper motive, or that it gained an unconscionable advantage from its actions.").

Promissory estoppel is typically considered "an alternative theory to recovery on an express contract." *Sparton Tech., Inc. v. Util-Link, LLC*, 248 F. App'x 684, 690 (6th Cir. 2007). Thus, the doctrine typically does not apply to situations in which there is an existing, enforceable contract between the parties that covers the subject matter at issue. Nevertheless, Tennessee courts have sometimes applied the doctrine in "cases where a claim of promissory estoppel was advanced" merely "to expand the terms of, not change the terms of, an existing contract." *Id.* (citation omitted). The Tennessee Supreme Court, moreover, has expressly held that the doctrine can be used in such a manner to, in effect, hold an insurance company to its own promises regarding the scope of a policy's coverage. Specifically, in *Bill Brown Construction Co. v. Glens Falls Insurance. Co.*, 818 S.W.2d 1 (Tenn. 1991), the court held that, where an insurance agent mistakenly promises "full coverage" for a particular type of loss as part of the inducement to enter into an insurance policy, such a promise can be binding, even if the policy itself does not actually provide such coverage. More recently, the Tennessee Court of Appeals has applied this principle to allow recovery where an insurance agent made a mistake in authorizing work on an insured's property, when the policy did not actually provide coverage for the work. *See Clark v. Tenn. Farmers Mut. Ins. Co.*, No. E2019-00746-COA-R3-CV, 2020 WL 1900421, at *10 (Tenn. Ct. App. Apr. 17, 2020) ("If such insurance adjuster, acting as an agent on behalf of the insurance company, made a mistake by authorizing work on an insured's property when the policy does not provide coverage for the work, the agent's actions could bind the insurance company and estop

12

the insurance company from denying financial responsibility for the work authorized by only the insurance company's agent and performed pursuant to that authorization.").

As the court previously discussed, Cornerstone's promissory estoppel allegations appear to hinge on its alleging of a type of "fraud or mistake," and such an allegation would give rise to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See LeBlanc v. Bank of Am., N.A.*, No. 2:13-CV-02001-JPM, 2013 WL 3146829, at \*13 (W.D. Tenn. June 18, 2013) (applying Rule 9(b) to promissory estoppel claim). Cornerstone's more fleshed-out allegations confirm that that is the correct standard. *See Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 751 (6th Cir. 2012) (acknowledging that the rule applies to some claims that are not expressly fraud claims). Cornerstone alleges that it was induced into entering into a million-dollar settlement agreement by Ehresman's false representation that Cornerstone's GuideOne insurance policy would fund that agreement for a full $1 million. Whether one would consider that fraud or merely mistake, it fits the description of Rule 9(b). Cornerstone therefore was required to plead the facts in support of this claim with particularity.

GuideOne argues that the court should dismiss Cornerstone's claim for promissory estoppel because (1) Ehresman was not GuideOne's agent and (2) the promise that he allegedly made was not sufficiently clear either to be enforceable or to induce reasonable reliance on behalf of Cornerstone. With regard to the first of those points, at least, GuideOne is correct. Under Tennessee law, "[t]he employment of an attorney by an insurer to represent the insured does not create the relationship of attorney-client between the insurer and the attorney, nor does that employment necessarily impose upon the attorney any duty [of] loyalty to the insurer . . . ." *Petition of Youngblood*, 895 S.W.2d 322, 328 (Tenn. 1995). Indeed, Tennessee rules of professional conduct generally "prohibit[] any relationship between the attorney and the insurer, or any other

13

person or entity, which impairs the attorney's complete loyalty to the client with regard to the performance for the client of the agreed legal services or with regard to any matter touching the attorney-client relationship between the attorney and the insured." *Id.* GuideOne and Cornerstone may have had shared interests when it came to the claims pleaded against Cornerstone in state court, but, on the topic of any insurance claim *by* Cornerstone *to* GuideOne, the parties and their interests were adverse.

Cornerstone has not identified any basis for concluding that Ehresman was an agent of GuideOne other than the fact that, because GuideOne assigned Ehresman, Cornerstone simply assumed that he worked for GuideOne. That confusion might have been genuine, but GuideOne's explanation of the respective relationships is the one that actually reflects Tennessee law. Cornerstone protests that the court is nevertheless bound to proceed as if Ehresman worked for GuideOne, because the Amended Complaint claims that that was the case, and this decision is being rendered pursuant to a Rule 12(b)(6) motion. But Rule 12(b) only requires the court to accept the plaintiff's facts, not its legal conclusions. Whether an actual agency relationship existed is a question of law, as applied to the facts, and the actual facts that Cornerstone has alleged do not support such a conclusion.

Although Cornerstone does not explicitly raise the issue, one could argue that Ehresman was an apparent, rather than actual, agent of GuideOne. Under Tennessee law, however, a party seeking to rely on apparent agency must show that "(1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment." *Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414, 421 (Tenn. Ct. App. 2004) (quoting *Mechanics Laundry Serv. v. Auto*

14

*Glass Co. of Memphis*, 98 S.W.3d 151, 157 (Tenn. Ct. App. 2002)). The Amended Complaint alleges no facts that would support concluding that the first element—acquiescence by GuideOne to Ehresman's authority to act on its behalf—was satisfied here. Accordingly, even if Cornerstone had asserted apparent agency, that argument would have failed.

The question of whether Ehresman's statement could be the basis for a promissory estoppel claim, *if* he had been an actual or apparent agent, is closer. The alleged statement that Cornerstone "should be entitled" to full coverage for the settlement is ambiguous. "Should" could mean either "should, based on GuideOne's clear obligations under the policy" or "should, based on my potentially contestable reading of the law." If Ehresman had actually been an agent of GuideOne, it might have been reasonable instead to construe the use of "should" in the former manner, as an express representation of a duty to pay. Because Cornerstone has not sufficiently alleged such an agency relationship, however, the court is not required to determine whether such a hypothetical claim would survive. The court instead will dismiss the promissory estoppel claim on the ground that Cornerstone has not sufficiently alleged a misrepresentation by GuideOne or an agent.[4]

## IV. CONCLUSION

For the reasons set forth herein, GuideOne's Motion to Dismiss First Amended Complaint (Doc. No. 22) will be granted, and the claims will be dismissed.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[4] The court notes that Cornerstone has not, at any point in this case, pursued a claim against Ehresman himself, despite the fact that, according to Cornerstone's version of events, it has lost half a million dollars due to its reliance on Ehresman's explanation of its rights under the insurance policies. The court accordingly is in no position to opine about the viability or timeliness of such a hypothetical claim.

15